| | | |
|---|---|---|
| TODD J. KOHL, | ) | |
| | ) | |
| Plaintiff | ) | |
| and | ) | |
| | ) | |
| GOLDEN RULE INSURANCE | ) | |
| COMPANY, A UNITED HEALTHCARE | ) | |
| COMPANY, | ) | |
| Subrogated Plaintiff, | ) | |
| | ) | Case No. 16-cv-01021 |
| v. | ) | |
| | ) | |
| WERNER CO., NEW WERNER | ) | |
| CO. d/b/a WERNER CO., | ) | |
| NEW WERNER HOLDING CO, | ) | |
| (DE), INC. and BB INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO BAR THE TESTIMONY OF PLAINTIFF'S EXPERT, DENNIS SKOGEN

Defendants WERNER CO. and NEW WERNER HOLDING CO., (DE), INC., additionally incorrectly sued as "NEW WERNER CO d/b/a Werner Co.," (collectively in the singular as "Werner"), by and through their attorneys, Tribler Orpett & Meyer, P.C., state the following for their Memorandum in Support of their Motion to Bar the Testimony of Plaintiff's Expert, Dennis Skogen:

## INTRODUCTION

This is a product liability action involving two products that were both manufactured by Werner: a D6224-2, 24-ft fiberglass extension ladder and an AC78 ladder stabilizer that was attached to the ladder. Plaintiff, Todd J. Kohl ("Plaintiff"), fell while using the ladder with the attached stabilizer to access a roof at his neighbor's house. Attached hereto as Exhibit A, and as

1

shown below, is a photograph of an AC78 stabilizer attached to a D6224-2 fiberglass extension ladder set up at the accident site.



The stabilizer fits over the top two rungs of the fly section of the ladder and is designed to prevent a ladder from leaning on a gutter. The stabilizer has two saddles. (A photo of the stabilizer is attached hereto as Exhibit B and is shown below.)



The top saddle has a spring-loaded cam lock that engages the top rung of the fly section of the ladder. (A photo of the cam lock is attached hereto as Exhibit C.) The lower saddle sits on the second rung from the top of the fly section and has a chain and pin. (A photo of the chain and pin is attached hereto as Exhibit D.) After the stabilizer is placed on the ladder and the cam lock is engaged, the pin is then inserted into the hole on the lower saddle. (A 40-second video showing how a stabilizer is attached to an extension ladder is attached hereto as Exhibit E.)

Plaintiff's theory of liability is focused solely on the design of the stabilizer. Plaintiff and his experts have no complaint about the operation of the Werner fiberglass extension ladder. Plaintiff's expert opines that the second rung somehow put a force on the pin causing the pin to bend and the stabilizer to pop off the ladder. It is undisputed that when the ladder is set up with the stabilizer properly attached—as reflected in Exhibit A—there is an approximate ¼-inch gap between the second rung and the pin. Plaintiff's expert, Dennis Skogen, agrees with Werner's experts, Dale King and Dr. Erick Knox, that when the ladder is in use and the top rung of the fly section is fully engaged in the cam lock on the stabilizer, there is no load-bearing force on the pin. (See pp. 128, 140 of the deposition transcript of Skogen, attached hereto as Exhibit F; see the last page of the Expert Report of Dale King and C.V., attached hereto as Exhibit G; and see p. 37 of the Expert Report of Dr. Erick Knox, attached hereto as Exhibit H.)

Skogen does not disagree with King or Dr. Knox. Rather he believes that *somehow* when Plaintiff was using the stabilizer and ladder, the cam lock *must have* become partially disengaged, thereby causing the pin to come into contact with the rung. (See p. 3, ¶ 3 of the Expert Report of Skogen, attached hereto as Exhibit I.) Skogen also believes that when Plaintiff climbed down the ladder, his weight caused the ladder to deflect so the cam lock fully disengaged from the top rung, which forced the pin into the second rung, causing the pin to bend and pull it out of the hole.

(Exhibit F, p. 193-194.)  However, when questioned further about his opinions, Skogen repeatedly testified that he was retained only to determine the "bending moment" of the pin and stated at least six times that he did not perform any reconstruction analysis.  (Exhibit F, pp. 76-77, 134, 176, 177, 178, 186 and 188.)  His untested and unsupported opinions amount to pure speculation.  That is why the Court should bar his testimony.

## PLAINTIFF'S TESTIMONY AS TO HOW THE ACCIDENT OCCURRED

Plaintiff had agreed to repair the flashing on his neighbor's roof on the date of the accident. To access the roof, Plaintiff used a Werner D6224-2 fiberglass extension ladder that he had owned for a number of years, with a Werner AC78 stabilizer that he had purchased that same morning. (See pp. 125 and 134 of the deposition of Todd Kohl attached hereto as Exhibit J.)  Plaintiff had purchased the stabilizer so that when he set the ladder up, it would not be resting on the gutter depicted in Exhibit A. (Exhibit J, p. 119.) He placed the stabilizer on the top two rungs of the fly section of the ladder. (Exhibit J, p. 134.)  The top saddle of the stabilizer was "fully seated" on the top rung so that the cam lock was fully engaged. (Exhibit J, p. 141.) He then placed the pin in the hole below the second rung.  There was a gap between the rung and the pin. (Exhibit J, p. 215.) He then lifted the ladder with the stabilizer and placed it on the roof.  (Exhibit J, p. 147.)

After setting up the ladder, Plaintiff climbed the ladder and got onto the roof.  He examined the flashing, then began to climb back down the ladder.  As he was three or four rungs down the ladder, he was eye-level with the pin of the stabilizer.  (Exhibit J, p. 184, 185.)  He noticed that the pin was bending and then all of a sudden the stabilizer came off the ladder and he fell to the ground. (Exhibit J, p. 194.)

## SKOGEN'S OPINIONS

Not only does Skogen opine that the design of the stabilizer is defective but goes further and offers the following opinions that build on one another to reach his conclusion that the design of the stabilizer proximately caused plaintiff's injuries:

1.   When Plaintiff was placing the ladder against the roof, he *somehow* caused the top rung to become partially disengaged from the cam lock; (Exhibit F, p. 192)

2.   When the rung became partially disengaged, the second rung of the fly section was resting against the pin in the lower saddle; (Exhibit F, p. 187)

3.   As Plaintiff climbed down the ladder, his weight caused the fly section to put a downward force on the pin, causing it to bend; (Exhibit F, p. 191, 193).

4.   The downward force was of such a magnitude that it caused the top cam lock to *somehow* become fully disengaged and the pin to come out of the hole, which caused the stabilizer to pop off the ladder.  (Exhibit F, p. 193, 194).

## LEGAL STANDARD

Plaintiff has the burden of proving by a preponderance of evidence that Skogen's testimony is admissible.  *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 572 (1993); *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702"):

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)  the testimony is based on sufficient facts or data;

(c)  the testimony is the product of reliable principles and methods; and

(d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Trial judges are to act as gatekeepers to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. Courts apply a three-step analysis to evaluate admissibility of expert testimony under Rule 702 and *Daubert*. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* Second, the expert's reasoning or methodology underlying the testimony must be reliable. *Id.* citing *Daubert*, 509 U.S. at 592-93. A district court has "broad latitude when it decides how to determine reliability." *Kumho Tire Co. v. Carmichael*, 56 U.S. 137, 142 (1999). Third, the expert's testimony must be relevant, or "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904.

## ARGUMENT

## I. SKOGEN IS NOT QUALIFIED TO OFFER OPINIONS REGARDING THE DESIGN OF THE STABILIZER.

Rule 702 requires a testifying expert witness to be qualified as an expert by knowledge, skill, experience, training or education. Fed. R. Evid. 702. The rule specifically contemplates the admission of testimony by experts whose knowledge is based on *specialized* experience. *Kumho*, 526 U.S. at 156; *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000). The simple fact is that not only does Skogen fail to possess the requisite specialized training to offer an opinion as to the design of the stabilizer but, furthermore, he fails to offer any accepted scientific methodology in reaching his conclusion that the stabilizer's design is defective.

At issue here is Plaintiff's claim that the defective design of the ladder stabilizer caused the accident. Werner has disclosed its engineer, Dale King, as a design expert. King has 37 years of exclusive and specific experience in the design and manufacture of ladders and ladder-accessories, like the stabilizer, and in reconstructing ladder accidents. (See Exhibit G.) Werner

6

also disclosed Dr. Erick Knox as a biomechanical engineer and accident reconstruction expert to recreate and explain how the accident occurred. Dr. Knox's firm performed a laser scan of the accident scene and built a precise mock-up of the roof-line and the side of the house where the incident occurred. (Exhibit H, pp.18-21.) King and Dr. Knox worked together to perform various tests to explain and demonstrate how the accident occurred and to refute the opinions offered by Skogen. That testing was videotaped and disclosed as part of Werner's Rule 26(a)(2) disclosure. (See video of testing, attached hereto as Exhibit K.)

In contrast, Skogen has no experience in the design or manufacture of ladders or ladder stabilizers. He has no formal education in the design of ladders or ladder accessories, such as stabilizers. (Exhibit F, p. 9-10, 13-14.) He has never been involved in the design or manufacture of a ladder. (Exhibit F, p. 43-44.) He testified that the American National Standards Institute (ANSI) promulgates standards that govern the design of ladders and ladder-accessories, (Exhibit F, p. 46-47), yet he has never been a member of an ANSI committee related to ladders. (Exhibit F, p. 47.) He has never attended any ANSI meetings related to ladders. (Exhibit F, p. 48.) He does not recall performing any of the specified ANSI tests on a ladder, and did not do so in this case. (Exhibit F, pp. 44-45.) In formulating his opinions here, he did not review the ANSI standards related to the subject ladder. (Exhibit F, pp. 46-47.)

Before being hired as Plaintiff's expert in this case, Skogen had never, for any reason, assessed the design or use of a ladder stabilizer. (Exhibit F, p. 23, pp. 41-42.) He does not own and had never used a ladder stabilizer. (Exhibit F, p. 36-37, 39.) His inspection of the subject stabilizer, the ladder and the site where the accident occurred lasted less than three hours. (Exhibit F, p. 144.) He did not perform any of the ANSI testing that governs ladder stabilizers. (Exhibit

7

F, p. 44.)  He only read certain pages from the ANSI standards that govern the stabilizer—and those pages were provided by Plaintiff's counsel.  (Exhibit F, p. 46-47.)

Skogen admitted that he did not even assess the overall design of the stabilizer.  Rather, he was retained for a sole limited and specific purpose:  to inspect and calculate the force it would take to bend the pin.  (Exhibit F, pp. 76-77.)  To make that determination, he used a load-applying machine to test five exemplar pins that were separated and isolated from the stabilizer and ladder.  (Exhibit F, pp. 152-154.)   The testing did not involve bending the pin with a ladder rung.  Rather, he used a short cylinder load applicator that was round on the bottom and square on the top to bend the pin.  (Exhibit F, pp. 161-162.)  During testing, the pin was able to move around and was free to rotate.  (Exhibit F, p. 157.)  The test only applied a vertical force down on the pin.  (Exhibit F, pp. 164-165.)  Skogen did not take any videos or photos while testing the pins and he did not feel there was any reason to document it as it was a "simple test."  (Exhibit F, pp. 154-55.)

Skogen did not perform any testing of the pin when it was actually fitted in the stabilizer and affixed to a ladder.  (Exhibit F, p. 172.)  He admits that he could have performed such testing by simply going to the accident site, putting the ladder and stabilizer in the same position as it was at the time of Plaintiff's accident, and then start hanging weights to see when the pin breaks.  (Exhibit F, pp. 172-73, 175.)  Skogen also did not conduct any analysis or testing to determine what force was applied to the rung when Plaintiff was standing on the ladder, (Exhibit F, p. 175), yet, again, he acknowledged that testing could have been performed to make that determination.  (Exhibit F, p. 175.)

Skogen acknowledged that when the stabilizer is fully engaged and properly seated on the ladder a gap exists between the ladder rung and the pin.  (Exhibit F, p. 128.)  He also admitted that no force would be applied to the pin if the stabilizer is used as designed and intended.  (Exhibit F,

p. 142.)  Nonetheless, Skogen testified that a force (the ladder rung) was in fact applied to the pin during Plaintiff's accident, resulting in the pin bending.  (Exhibit F, p. 177.)  Yet Skogen admitted he does not know the exact mechanism of how the ladder rung came in contact with the pin—which is not supposed to happen if the stabilizer is used properly—because he did not reconstruct the accident.  (Exhibit F, p. 177, 188).

In short, Skogen is not qualified to offer an opinion that the stabilizer is defective in its design.  He has no experience with the product—let alone the necessary "specialized" experience to qualify as an expert.  Further, he conducted no testing to support his opinion, although he admitted he could have done so.  Finally, he did not reconstruct the accident to ensure that his opinion regarding the design even correlated to how and why the accident occurred.  Therefore, he is not qualified to testify as an expert in this case.  On that basis alone his testimony should be barred.

## II.  SKOGEN'S OPINIONS AS TO THE SEQUENCE OF EVENTS THAT PURPORTEDLY CAUSED PLAINTIFF'S ACCIDENT FAIL TO MEET THE RELIABILITY STANDARDS SET FORTH IN FEDERAL RULE OF EVIDENCE 702 AND UNDER THE *DAUBERT* ANALYSIS.

Even assuming that Skogen is qualified to offer testimony regarding the design of the stabilizer, his opinion as to how the purported design defect led to Plaintiff's accident should be barred because the basis for his opinions fails to satisfy any of the *Daubert* factors for reliability and reliance.  *Daubert* sets forth the following non-exhaustive list of factors for a district court to consider when assessing whether an expert's methodology or reasoning is reliable under the scientific method: (1) whether the theory has been or is capable of being tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error; and (4) the theory's level of acceptance within the relevant community.  *Daubert*, 509 U.S. at 593-94; *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011).  Additional

factors have been added by *Daubert*'s progeny including: (5) whether the proposed expert ruled out other alternative explanations; and (6) whether the proposed expert testimony has sufficiently connected the testimony to the facts of the case. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686-87; *Kumho*, 526 U.S. at 154. "Even [a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method." *Clark v. Takata Corp.*, 192 F.3d 750, 759 n. 5 (7th Cir. 1999).

Here, Plaintiff has the burden to prove that his accident resulted from the defective design of the stabilizer. Skogen does not offer competent testimony on this point. Rather, throughout his testimony, Skogen repeatedly stated that he was retained for a limited and specific purpose: solely to inspect and calculate the force that it would take to bend the pin on the lower saddle of the stabilizer. (Exhibit F, pp. 76-77 and 134.) For Plaintiff to meet his burden of proof that the purported defective design of the stabilizer proximately caused his accident, he needs to establish all of the following, all of which Skogen simply assumes rather than competently offering an opinion as to:

1. When Plaintiff was placing the ladder against the roof, he *somehow* caused the top rung to become partially disengaged from the cam lock; (Exhibit F, p. 192)

2. When the rung became partially disengaged, the second rung of the fly section was resting against the pin in the lower saddle; (Exhibit F, p. 187)

3. As he was climbing down the ladder, Plaintiff's weight caused the fly section to put a downward force on the pin; (Exhibit F, pp. 191, 193)

4. The downward force was of such a magnitude that it caused the top cam lock to become fully disengaged and the pin to be fully dislodged whereby the stabilizer popped off the ladder. (Exhibit F, pp. 193, 194)

As set forth below, although Skogen characterized the aforementioned statements as "opinions" they are nothing more than hypotheses that Skogen has made no effort to test and thereby validate his conclusions based thereupon.

**A.**  **Skogen's Opinion that The Cam Lock Became Partially Disengaged When Kohl Set Up The Ladder Fails to Meet the Criteria of *Daubert* and Should Be Stricken.**

Skogen readily admits that if the stabilizer is fully seated on the top rung of the fly section, there is a gap between the second rung and the pin and, therefore, no force is exerted upon the pin. (pp.128, 140, 142).  However, if the stabilizer was fully seated, Plaintiff would clearly have no claim.  Therefore, Skogen has opined that while Plaintiff was setting up the ladder with the stabilizer attached, something caused the rung not to be fully seated which in turn caused the cam lock to be partially disengaged which caused the second rung of the fly section to come into contact with the pin.  When asked to explain how, from a scientific perspective, the cam lock could possibly have become disengaged if Plaintiff had properly engaged it, he admitted, he did not know.  He lamented: "You're asking me so many detailed questions about a reconstruction I haven't done."  (Exhibit F, p. 188.)  All of Skogen's opinions are predicated on the cam lock *somehow* being partially disengaged from the top rung of the fly; yet Skogen has no idea how that actually happened.

Skogen then offered three alternative as to what *might* have happened.  In other words, three *guesses*:

1.      Plaintiff *could have* installed the stabilizer on the ladder properly, placed the stabilizer on the roof and then partially retracted the fly section, thereby lifting the stabilizer out of position.  (Exhibit F, p. 187-89.)

2.      Plaintiff *could have* installed the stabilizer properly, but then manipulated the ladder while it was on the roof so the bottom saddle came in contact with a lower rung, pushing up and partially disengaging the cam lock form the top rung. (Exhibit F, pp. 190-91.)

3. Plaintiff *could have* simply failed to put the stabilizer on the ladder correctly so it was not properly seated on the ladder. (Exhibit F, p. 191-92.)[1]

Although Skogen offered these three options, he repeatedly admitted that he did not test any of his hypotheses—either on this or related issues. He testified:

> "You're talking about have I reconstructed the details of how it happened? No. I haven't done so, and I haven't been asked to do so." (Exhibit F, p. 176.)

> "…but I don't know exactly how it got to be against the pin, but I understood he extended it and lowered it, and so that movement would be an explanation, but again, I haven't fully reconstructed exactly how the accident happened." (Exhibit F, p. 178.)

> I haven't reconstructed. … But again, I haven't been asked to analyze all those details." (Exhibit F, p. 180-81.)

> "Please understand, I have not reconstructed the accident." (Exhibit F, p. 186.)

> "You're asking me so many detailed questions about a reconstruction I haven't done…" (Exhibit F, p.188.)

Clearly, the hallmark of the *Daubert* analysis is that the scientific method requires testing to prove the validity of a scientist's conclusions. Here, Skogen has freely admitted that he did absolutely no testing to determine whether any one of his three suggested alternatives could actually cause the cam lock to become partially disengaged resulting in the second rung resting on the pin at the time of Plaintiff's accident. This is critical because Skogen's opinion that a defect caused Plaintiff's fall is entirely predicated on the assumption that the rung was resting on the pin, causing the pin to fail. Further, Skogen admits that the lack of testing is not because a test cannot be performed; but rather, it was not his job. As Skogen stated, many times in his deposition: "I was not asked to reconstruct this accident." (Exhibit F, pp.134, 176, 177, 178, 186, 188.)

---

[1] This alternative completely contradicts Plaintiff's testimony that he put the stabilizer on correctly. Plaintiff testified that he placed the stabilizer on the ladder so that it was fully seated. (Exhibit J, pp. 140-141.)

Notably, Skogen did not testify that he *could not* reconstruct the accident—only that he was not asked to do so. Without proper testing, Skogan is merely *speculating*. The law is clear: speculation is not a substitute for proof. *U.S. v. Landry*, 257 F.2d 425, 431 (7th Cir. 1958); *In re Cohen*, 507 F.3d 610, 614 (7th Cir. 2007). By requiring that an expert rely on "facts and data" and by requiring proof that he "knows of what he speaks," Rule 702 prohibits speculation by experts. *Cummins v. Lyle Indus.*, 93 F.3d 362, 367-68 (7th Cir. 1996); *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 771-72 (7th Cir. 2014). Because Skogen's opinions and testimony that the stabilizer's design caused the Plaintiff's accident are based on speculation, they are unreliable and inadmissible. Plaintiff has not met his burden to admit Skogen's proposed testimony.

While Skogen did not perform any tests to verify his hypothesis, Werner's expert, Dr. Erick Knox, did in fact perform extensive testing to demonstrate that Skogen's opinion about how the cam lock can become partially disengaged and thereby cause the rung to come into contact with the pin is without merit. (See Exhibits H and K.) As you will note in the video that shows test #3, entitled "Manipulated stabilizer 500#lb. demo," he physically manipulates the cam lock so that it is partially disengaged. However, as soon as he lets go of the stabilizer, gravity takes over and fully seats the cam lock so that the pin is not resting against a rung. Based upon the testing, Dr. Knox verified his opinion that: "[T]he stabilizer seats from gravity and absent manipulating the stabilizer, there is a gap between the pin and fly rung." (Exhibit H, p. 38.)

As Dr. Knox's testing demonstrated, Skogen's failure to test his hypothesis that the cam lock was somehow partially disengaged and the second rung was resting on the pin shows a complete lack of any reliable methodology.

**B.** **Skogen's Opinion That The Stabilizer Came Off The Ladder Due To The Force Applied When Plaintiff was Climbing Down The Ladder Was Not Tested And Thus Is Not Reliable Under the *Daubert* Standard.**

After failing to explain how the cam lock became partially disengaged when Plaintiff set up the ladder (or to support that theory through testing), Skogen doubles down with more speculation. He simply assumes that the downward force of Plaintiff's weight as he climbed down the ladder caused the cam lock to fully disengage thereby causing the stabilizer to come off the ladder. (Exhibit F, p. 193-95.) He did not conduct any testing or perform any analysis to reach that conclusion. Rather, he simply *assumes* that is what happened. An *assumption* is not science, and Skogen's second critical *assumption* should not be admissible under *Daubert*.

The Seventh Circuit's decision in *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887 (7th Cir. 2011) is directly on point. The plaintiff in *Bielskis* was injured while using a "mini-scaffold" in the course of his carpentry work. The mini-scaffold was on caster wheels. The mini-scaffold collapsed under his weight because one of the caster stem above one of the wheels snapped. *Id.* at 890. The plaintiff retained a mechanical engineer to offer expert testimony as to what caused the caster stems to break. The expert offered two opinions: (1) the stem broke due to a "brittle fracture;" and (2) the fracture was caused by screwing the stem too tightly into the base of the scaffold. *Id.* at 892. The expert did not perform any testing to establish a link between his two opinions, and the trial court granted the defendant's motion to bar the expert's opinion under *Daubert*. *Id.*

The Seventh Circuit affirmed, first noting that deference should be given to the trial court on the admissibility of expert testimony. *Id.* at 894. The Court went on to note that the plaintiff's expert conducted no testing whatsoever to support what the Court called his "hypothesis," although the opinion certainly could have been tested. *Id.* As support, the Court highlighted the fact that

defendant's expert, ESI (Werner's expert here), conducted multiple tests and analytical and diagnostic assessments to reach its opinion that the caster stem was not over-tightened, but rather fractured because it was too loose. *Id.* at 892. The Court stated, "Although the methodology used by ESI is certainly not the only way testing could have been performed, it exhibits that testing was not only possible but helpful." *Id.* at 895. The Court also noted that without testing, the plaintiff had no way to establish that his expert's opinion was based on reliable methodology, generally accepted in the engineering community, allowed for an assessment of its potential rate of error, or subject to peer review. *Id.*

The *Bielskis* decision provides direct precedent for this Court to follow in granting Werner's motion to bar Skogen's testimony. Like the expert in *Bielskis*, Skogen readily admitted he could have tested his opinions, but simply did not do so. Also like *Bielskis*, Werner's experts have conducted extensive testing to support their opinions, including an accident reconstruction using an identical cross-section of the house and the same model ladder and stabilizer. This demonstrates that testing is not only possible, but helpful to explain and demonstrate the basis for each opinion. Skogen's failure to test his opinions make his testimony unreliable and inadmissible under Rule 702 and the *Daubert* standard.

**C.** **Skogen Has Not Offered a Viable Alternative Design for the Stabilizer That Has Been Tested Or Generally Accepted in The Engineering Community or That Has Been Peer Reviewed.**

To recover under a design defect theory under the Wisconsin product liability statute, Plaintiff must prove with reliable scientific testimony:

(1)    The foreseeable risks of harm posed by the stabilizer could have been reduced or avoided by the adoption of a reasonable alternative design; and

(2)    The omission of the alternative design renders the stabilizer not reasonably safe.

15

Wis. Stat. § 895.047(1)(a).  Plaintiff must not only establish that his expert witness has employed a reliable methodology to arrive at his defect opinion, but also must offer sufficient evidence of a safer alternative design.  *In re Zimmer*, 2016 WL 6135685 at *16 (N.D. Ill. October 21, 2016) (interpreting Wisconsin law).

Further, the Seventh Circuit has "consistently recognized the importance of testing the alternative design."  *Dhillon v. Crown Controls Corp.,* 269 F.3d 865, 870 (7th Cir. 2001); *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 535-38 (7th Cir. 2000); *Cummins v. Lyle Industries*, 93 F.3d 362, 368 (7th Cir. 1996).

In affirming that the plaintiff's expert testimony was not admissible in *Bielskis*, the court held that the alternative design offered by the plaintiff's expert—a different type of screw or snapping mechanism to affix the caster wheel to the scaffold—did not pass scrutiny because (1) the alternative design had not been tested by the expert and (2) the alternative design was not used by other manufacturers in the marketplace.  *Bielskis*, 663 F.3d at 895.  The expert's blithe declaration, "I don't have to test it," was not sufficient, no matter the simplicity of his alternative design.  *Id.*

The Seventh Circuit reached the same decision in *Dhillon*.  There, the plaintiff was injured while operating a forklift.  He alleged that the forklift's design was defective because it did not have a rear door.  *Dhillon*, 269 F.3d at 868.  The plaintiff's experts intended to testify about an alternative design that incorporated a rear door and that the lack of a rear door was the proximate cause of the plaintiff's accident.  *Id.*  The trial court concluded that neither of the plaintiff's experts passed through the evidentiary "gateway" established by *Daubert* and barred their testimony.  *Id.* The Seventh Circuit affirmed the district court's decision that the testimony was inadmissible under *Daubert*.  *Id.* at 870-71.  The court emphasized the fact that the experts had performed no

16

tests of their alternative design to see if it was (1) economically feasible and (2) safer than the design without the rear-door. *Id.* at 870. The court also noted that the plaintiff's experts had failed to provide any evidence that the rear door proposal had been favorably subjected to peer review or generally accepted in the relevant communities. *Id.*

In *Bourelle v. Crown Equipment Corp.*, 220 F.3d 532 (7th Cir. 2000), the court addressed a similar situation where the expert proposed an alternative design for a forklift but failed to support it. The expert did not do any scientific testing of his alternative design of a guard structure, had not prepared a detailed design or calculations for the design, had not performed an economic feasibility study, and did not conduct any computer analysis or any risk-utility type testing for the design. *Id.* at 536-37. The court noted that testing is vital in an alternative design case and affirmed the district court's order excluding the expert's opinion as unreliable. *Id.* at 538. The court further found that the expert's opinion was properly excluded because it was also unreliable under the other *Daubert* factors. Specifically, the court noted that, in addition to the expert's failure to conduct any testing, the expert's theory had not been tested by any other organization, had no recognized approval, and the expert had seen no industry studies regarding accident experience with the forklift at issue. *Id.*

The above-cited cases provide direct precedent for this Court to follow in the instant case. Skogen offered two proposed alternative designs for the stabilizer: (1) make the pin thicker or (2) employ a designed used by other manufactured stabilizers (pp. 70 149-50, 197-99, 200-01, 205, 206.) He did not test either proposed alternative and he offered nothing to show that someone else had reliably tested either alternative.

With regard to the thickness of the pin, Skogen simply calculated that a thicker pin could theoretically bear a greater load—which is axiomatic but not helpful. He did not test how that pin

17

would function within the design of the stabilizer (Exhibit F, pp. 199, 200.)  He did not place the pin under a load similar to the one placed on the ladder at the time of the accident to test its function.  (Exhibit F, pp. 199, 200.)

More importantly, Skogen's focus on the thickness of the pin skirts the issue.  Skogen himself agrees that when the stabilizer is properly installed and the ladder is in use, *no load is applied to the pin*.  (Exhibit F, p. 128, 140, 142.)  It is only when the cam lock is disengaged from the top rung that the pin can be bent by the lower rung.  (Exhibit F, p. 191-93.)  In Skogen's (untested) theory of events, if the cam lock had not disengaged, the accident would not have happened.  But Skogen does not address nor offer an alternative design of the <u>cam lock</u>.  Rather, he attacks the design of the pin, claiming it is not sufficient to do a job, that according to Werner Co., it was not designed or intended to do.  An apt analogy is a car accident where a person is injured because the brakes on his vehicle failed.  Yet his expert does not address the design of the brake system; instead he asserts that if the door had thicker panels it would have prevented the injury.  In short, Skogen's opinion about the thickness of the pin does not address the alleged defect that purportedly caused the accident: the cam lock allegedly disengaging—*somehow*—from the top rung.

Skogen's opinions regarding the design of two other stabilizers, the Little Giant L10111 and Werner AC96, is even weaker.  First, he did not pick out the other two models as viable examples that could be used with the subject ladder; rather, he was specifically instructed by Plaintiff's counsel to look at only those alternatives.  (Exhibit F, pp. 149-150.)  Skogen admitted that the other Werner model he examined, the AC96, specifically has a warning that it cannot be used on a fiberglass ladder, such as the ladder in this case.  (Exhibit F, p. 201.)  When asked why, his response was "I don't know exactly why."  (Exhibit F, p. 201.)  He has not physically used the

AC96, he simply printed literature about it off the internet  (Exhibit F, p. 203.)  The other stabilizer design Skogen examined was the Little Giant L10111, manufactured by Little Giant.  (Exhibit F, p. 205.)  He does not know if that Little Giant model was even in existence when the accident occurred in 2015.  (Exhibit F, p. 206.)  He admitted that he does not know if the Little Giant would work on the subject ladder, stating "I didn't study that particular aspect."  (Exhibit F, p. 205.)  Again, he simply obtained information about the Little Giant online and looked at YouTube videos of how it worked. (Exhibit F, p. 206.)  When asked whether Little Giant recommends using its stabilizer with the subject ladder, Skogen stated: "I don't know." (Exhibit F, p. 205.)  In short, Skogen offers no competent testimony that other designs would have worked for the ladder in question.

Like the barred testimony in *Bielskis*, *Dhillon, and Bourelle*, Skogen simply concludes his proposed alternative designs would have made the stabilizer safer, but did absolutely no testing to reach that conclusion.  His opinions are not based on any reliable scientific testing, data or analysis. He offers nothing more than an unsupported conclusion, with no indicia of reliability, which is an insufficient under Rule 702 and the *Daubert* standard. *Clark*, 192 F.3d at 752 ("Where the proffered expert testimony offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact."); *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.")

19

## Conclusion

Wherefore, for all of the reasons explained above, Werner prays that this Honorable Court enter an order barring the testimony of Dennis Skogen, in its entirety or any portion thereof, and for any further relief this Court deems just and proper. Werner requests oral argument.

Respectfully submitted,

TRIBLER ORPETT & MEYER, P.C.

s/ Michael J. Meyer_____
One of defendants' attorneys

Michael J. Meyer – ARDC # 6193712
Patrick E. Burgess – ARDC # 6274640
TRIBLER ORPETT & MEYER, P.C.
225 West Washington Street, Suite 2550
Chicago, Illinois 60606
(312) 201-6400
(312) 201-6401 (fax)
docket@tribler.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of Defendants, Werner Co. and New Werner Holding Co. (DE), Inc.'s, Memorandum in Support of Defendants' Motion to Bar the Testimony of Plaintiff's Expert, Dennis Skogen, was served upon:

Victor C. Harding
Krista G. LaFave Rosolino
Warshafsky, Rotter, Tarnof & Bloch, S.C.
839 North Jefferson St., Ste. 300
Milwaukee, WI 53202
(414) 276-4970
(414) 276-5533 - fax
vich@warshafsky.com
kristar@warshafsky.com

Aaron M. Ninnemann
2931 Holmgren Way, Ste. A
Green Bay, WI 54304
(920) 499-5700
920-499-9790 - fax
aninnemann@gerberslaw.com

service was accomplished pursuant to ECF as to Filing Users and complies with Local Rules as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 2550, Chicago, IL 60606, on May 4, 2018 with proper postage prepaid.

s/ Michael J. Meyer
an Attorney